115-3648, Ecolab, Inc. v. Workers' Compensation Comm'n, 7 Eastwood Road. Good afternoon, your honors. May it please the court, my name is John Campbell. I'm here on behalf of Ecolab, the employer in this case. The appeal from the circuit court ruling, twofold really, there is an argument. We are asserting that the ruling on accident and cause of connection was against the manifest wit of the evidence. I realize that is a difficult burden at this level of appeal. I don't want to dismiss it. It is not my primary issue, but I do want to comment and ask the court to look at the evidence and realize that, just on a few points, that this is a woman who claims an injury while assembling small parts, who said she was hurt in early December of 2009, worked for two weeks without treatment, worked full duty, and when she first went to the doctor said nothing about being hurt at work. So there's some real red flags here. When we get to the end of the evidence with regard to the mechanism of injury, we have two job videos, one of a job she did prior to her alleged date of loss and a supplemental video showing effectively what she did at the time she said she was hurt. And it's fairly innocuous. And I would invite the justices here to watch that and see if it coincides with the opinions of Dr. Levin with regard to whether this is an activity that rises to anything greater than our day-to-day activity. There was actually testimony from one of our witnesses saying this is equivalent to opening an already open jar of peanut butter. I think the judge actually asked, a new jar of peanut butter or one that's open? Because that could be a judge that's admitted, at least sometimes. Setting aside the peanut butter for just a minute, if we could, let's break this down. Are you contesting there was an accident here? I am. I'm saying that this job did not rise to the level of accident because there was no timely report. It was within the 45 days. But someone who works full duty without a complaint for two weeks and goes to the doctor and says nothing about a work injury, this isn't repetitive. This is a specific event. Was there any testimony to rebut the claimant's testimony about the accident? Other than the absence of timeliness in the medical records. There was none. It's hard to prove a negative, Your Honor. You're exactly right. Right. Okay. Exactly so. In essence, you could say the commission found her testimony regarding the accident and the mechanism was unrebutted by the record, correct? No. I would hesitate to say that. Other than you're delayed. Right. Because I'm relying on Dr. Levin saying I don't think the job caused the ultimate condition of the cervical spine. So I am relying on that. There's really two things here. This woman claimed a shoulder injury at first. And by the Ock Health measure, it had more or less resolved, developed into a cervical issue, and that's where the treatment really intensified. Well, what about Dr. Rinello's opinion? Didn't Dr. Rinello's opinion corroborate her, that prior to December 1st, she was asymptomatic? Yes, but the record contraindicates that because I did present evidence that she had complained of right upper extremity pain, and I believe it was August of the same year. So a few months prior, she had problems. So you provided some contrary medical evidence, but Rinello did give a causal connection opinion. Did he not? He did. He absolutely did. And I understand it is a manifest weight standard. I'm just pointing out that it is based simply on what the claimant explained to her. And there's a lot of evidence and things I mentioned here this afternoon that contraindicate that. So I would ask the court to look at that and decide whether or not, both whether or not there's an accident causing the cervical condition, and whether this mechanism is a greater risk outside the risk. That interests me. What did she testify she was doing when she was injured? It was assembly. She both assembled and disassembled some small plastic parts. Uh-huh. And it was twisting on and off. When she was tightening it, the explanation is that you need to be careful to not tighten too hard, because they can crack. Of course, I alluded to that because I'm evidencing that you can't torque it too hard. You can't use too much stress. You'll crack these plastic parts. Well, she was using a wrench, I understand, as I understand the facts, to tighten a pipe on the machine when she felt a snap in her neck. Right. These are PVC pieces. And what is it that you think is she's not doing anything other than what normal people do? I'm using the example that I believe the claimant acknowledged, that the level of stress and for this is no greater than opening a jar of peanut butter. And she didn't do that specific activity. Well, she wasn't opening a jar of peanut butter. No. She was tightening something with a wrench onto a machine. And she was hired and paid to do that, was she not? Absolutely. So then it both arose out of and in the course of it. If she was hurt, yes. Well, the commission believed her. I understand. That's correct. No, no, no. It arose out of and in the course of whether she was hurt or not. What you're talking about is causation to her alleged condition of ill-being. She suffered an accident. I don't believe that she actually suffered an accident. But the commission did. I know the commission did that. And there's nothing you can do about that. I understand. I do. I do think there's evidence with Dr. Levin and with the points I made in the absence of an immediate report and treatment. But I'll rest on my brief on that. I would like to get to my hearsay appeal, the aspect of the appeal with regard to hearsay. I think it's very important. As this Court well knows, during testimony, the claimant expressed that Dr. Malik, her fifth doctor, had referred her to Dr. Rinella. Okay? There is no referral in the chart at all. There's no comment by Dr. Malik that he made a referral. There's no acknowledgment by Dr. Rinella that he accepted the referral. Okay, so answer me one question. How did the claimant get copies of Dr. Malik's treatment records? How did the claimant? Yeah, he brought them to the appointment with Rinella, right? Okay. That's not uncommon for individuals to do that. All right. Well, so you're saying that, I mean, couldn't the commission then infer that there was a referral and didn't the commission observe that Rinella testified? He received a number of referrals from Malik in the past. Isn't that some circumstantial evidence to corroborate the claim? It is the most tenuous of circumstantial evidence. And it is the only thing you could even call it evidence of a referral. That's the equivalent of saying there's an accident outside, and I walk with the commission a few days a week so I must have seen it because I do occasion that intersection. That's not evidence. With respect, it isn't. That's evidence that there may be referrals. How about when we ask Dr. Rinella directly, is there a referral? How did she come to you? He said, I don't know. That was his answer to the direct question was that he doesn't know. There's nothing else in the record. And I implore the court to try to find it. I saw nothing in the record that helps the claimant establish a referral. I know in this business that we offer latitude for referrals. When doctors mention other doctors' names, when they CC each other, it's often understood that that's probably a referral. I do understand that. When they discuss each other's opinions, we consider that to be perhaps a referral. In fact, earlier in this case, that may have happened with Dr. Castellanos and Dr. Frank and some of the other doctors. They talk about each other and things like that. And while I have questions on those referrals, the most important one is the last alleged referral to Dr. Rinella, who is the only one to recommend surgery in this case. Okay, so let me ask you a very pointed question. The commission obviously found that what I just discussed with you was circumstantial evidence. There was some reasonable inference to be made that it was a referral from Malik. So we're supposed to announce commission error. It found there was a reasonable inference. We find it's not a reasonable inference. You lose. Is that what we're supposed to say? Among other things, yes. I mean, in summary, I do have other points. But, Your Honor, we look at whether or not there was prejudice by allowing this testimony and whether or not there was any harm in allowing this testimony. Was it harmless admission of hearsay? Absolutely not. It opened the door to a surgery that no other doctor, five other doctors, six actually, had recommended to treatment that by the claimant's own testimony didn't help her. She was no better off after this surgery. It shouldn't have been done, and yet we're allowing her hearsay testimony to be the only basis that we allow this in. If we allow this, and I don't mean to engage in slippery slope here, but this is a classic case where there's nothing else to demonstrate a referral. If we allow claimants to come in every case and simply say, the doctor referred me in the face of the own doctor saying he doesn't know how the patient came there, Section 8 rule on the two-doctor choice has no teeth at all. The rule has been undermined. What did the arbitrator mean by a prima facie presumption in regards to this issue about the referral? This is a quote. Although there may not be a written referral from Dr. Malik to Dr. Ranella, there is testimony from the claimant's name that creates a prima facie presumption on the issue. I don't know how to explain that of the arbitrator. The commission didn't comment on it, and the circuit court, in my opinion, used an improper standard on this issue. I think this is an abuse of discretion issue, not manifestly the circuit court, maybe painted with a broad brush. None of that was delineated or discussed by the court. My focus is that it should have been an objection that was sustained because there's no cooperative support for this at all. It's very self-serving testimony, obviously. I wrote a letter in 2011 to the claimant's attorney, it's one of my exhibits, citing the fact that this is a serious issue with the claimant exceeding choice of physicians. It was not cured. Dr. Malik never testified, nothing was produced by claimant to demonstrate that there was a referral at all. I understand the logic of the argument, but you'd have to concede that this is a frequent issue in many contexts. I mean, you have the issue where, as you know, you don't even need medical testimony for a claimant to sustain their case. They could testify, and you could have three doctors on the other side, and the claimant could still win. If the commission believes the claimant that it was a referral from another doctor, and you say claimants can march on all day long now and start saying that, doesn't that still fall within the commission's purview to make that decision? I don't believe so in the context of no other cooperating evidence. When I read the case law on this issue of abuse of discretion, they look to whether or not there's other evidence that can be relied upon to support what is otherwise hearsay. I don't think there's a question this is hearsay. This is a statement of another doctor out of court, et cetera, et cetera. It's the hearsay rule. Is this an exception? Should there be an exception, I think, is where we get to. And when I look at the exceptions in the rules, Section 803, and I look at the case law, none of them fit. Hearsay in what context? I'm sorry? Hearsay in what context? Is it being offered for the truth of the matter, sir? Yes, the truth as to whether or not there was a referral, therein keeping it within the confines of the two-doctor rule under Section 8 of the Workers' Compensation Act. So I believe that's the only reason it's submitted. You're saying the only evidence that would support a referral is hearsay. That's what you're saying. Yes, and after that, if it was ruled on properly, there's no evidence of referral. It was made an issue. Choice of doctor was made an issue by me at trial. And I'm asking the court to apply the rules of evidence, which I think is clear hearsay, to the War Compact. There's a reason for this application. And, again, I don't want to get into it too much, but there's something to be said for the fact that this woman saw five other doctors. Dr. Mike Malik, who is no stranger to this industry, who has never hesitated to do surgery when it's needed, he didn't recommend surgery in this case. She found her way to a sixth doctor, Dr. Ranella, who performs cervical fusion and then extends it, and she's no better off. Do you judge the efficacy and the purpose of it in hindsight, or do you have to base it at the time? I realize that, Judge. You could have known. I mean, it happens in a lot of cases. I realize that. All right. But I think it's worth noting, in terms of the timeline, and that no one else decided that she was a surgical candidate until the doctor she had found. And, again, there's other evidence, too, that I know I've cited in my brief. Dr. Malik's records. She comes back to Dr. Malik, and she tells Dr. Malik that she saw another doctor, not the other way around. And that's pretty persuasive. So there's just nothing here, Your Honors. I would ask you to apply the black-letter law of the Workers' Compact, the rules of evidence that we all learned, evidence when we were in law school, and apply it properly. Remain on this and let the Commission decide it based on evidence that's admissible. If there are no other questions, I'll reserve my time. I believe you have time to apply. Thank you. Counsel, you may respond. Good afternoon, Your Honors. I'm Martha Niles. I'm here on behalf of Ms. Segura and the Illinois Workers' Compensation Commission. May it please the Court. Counsel's argument rests on two points. He wants you to rewrite Illinois law, which would negatively affect the remedial purpose of the Workers' Compensation Act, and he wants you to reweigh the evidence. It's as simple as that. My client was seen by a number of doctors. She did get referrals. She saw her personal physician, Dr. Pla. We'll call Dr. Pla A-1. A-1 sent her to another doctor because Dr. Pla did not want to deal with workers' compensation matters. She went to Alexia and was seen there. She then was sent by Dr. Pla to Dr. Prince. But, Counsel, let's get to the issue. It's the question of whether she was referred to Dr. Ranella or not. Yes, sir, she was. Well, let's get to how ñ what's the evidence of that, please? The evidence of that is that there are sufficient indicia of truth in the entire medical history to demonstrate that she had referrals from each of the doctors. Dr. Ranella, as was pointed out earlier, did testify that he received a number of referrals from Dr. Malik because they preferred Spanish-speaking doctors when you have many patients who are Spanish-speaking. That was the situation here. Dr. Ranella acknowledged that he received referrals from Dr. Malik. My client testified. Her testimony, her unrebutted testimony, is prima facie proof that she had a referral. Isn't it hearsay? No, sir, it is not. Why not? And even if it were, it falls into an exception of hearsay. What exception? You're not saying based on a motive. You're not contending that this comes under the motive exception. I'm sorry, I'm not sure I understand what you're saying by motive, sir, but I'm saying that it has to do with the effect on her state of the mind. The effect on her state of mind. This state of mind was affected, which takes it outside the hearsay rule based on Illinois law. She would not have gone from doctor to doctor to doctor had the doctors not told her to go to these other doctors. For example. Counsel, I think your real argument is assume that it is hearsay. Why is the decision of the commission not against the manifest weight of the evidence or an abuse of discretion? I think that would be the better argument. Well, if you want that one, sir, even if it were hearsay, it falls into an exception because it's in the treating medical records. She was going to these doctors and telling them and taking the information that I'm being sent to you by other doctors. I've had this treatment done. There is nothing in the treating medical records that shows a referral from Dr. Malick to Dr. O'Neill. There is nothing. There is sufficient indicia of truth in her testimony and in the other records to support her testimony. So, in other words, if there is an indicia of truth to hearsay, hearsay is admissible. Is that the argument? No, sir. I'm saying first that this is not hearsay, as I've said before, and even if it were, it falls under an exception for medical treatment. Well, the medical treatment exception allows the medical care provider to testify to what the patient, in the way of complaints and history and so forth. But here you have the patient wanting to testify as to an out-of-court statement that the doctor made. It doesn't work that way. Well, sir, I think in this case it does because... Oh, wait. You say in this case. Does the law allow it? Is that a legally recognized exception to the hearsay rule that a patient can use, is it 8034? I think it's 8035, but I'm not positive on that. But in any event, that exception in order to testify as to what care providers have told the patient. Well, it has been allowed on a number of occasions in workers' compensation, so I believe it is acceptable, sir. That's for the purposes of diagnosis and treatment. That's not the issue here because we haven't gotten to that point. Is your argument that it's admissible to show her state of mind as to why she came to the doctor? Yes, sir. Is that what you're sort of saying? I am saying that, sir. The operative effect on her and why she went there? Yes, sir, because she would not have otherwise been going to different doctors. She needed to understand this from her doctors and go to the different doctors. And when you look for the indicia of truthfulness, you can see it in the letter from Dr. Frank back to Dr. Prince. You can see it in the referral from Dr. Malik to our neurosurgeon, which in his office note in June. They're not attacking the prior referral. They're only attacking one, Malik, to Rinella. That's the issue. Don't confuse it with other referrals. I don't understand this. I don't think there's any question in this case that the reason why she testified that Malik told her to consult with Rinella was to prove the truth of the statement. And that's hearsay. And it's clear that the commission viewed the testimony as proof of a valid referral. So now the question becomes, is there sufficient evidence in the record outside of the statement, which was hearsay and probably shouldn't have been admitted, to establish that there was a referral between Malik and Rinella? I think Rinella's testimony that he accepts a number of referrals from Malik under similar circumstances is sufficient. I also would respectfully disagree with your statement that it should not have been admitted. I do not believe there is an abuse of discretion here in the arbitrator admitting the testimony. I believe that the ---- Well, let's just assume there is. Okay? I think your argument you're messing up the concept of pattern and practice is what you're trying to talk about in terms of the past. Well, it would be an argument of pattern and practice that she never saw a doctor except through referrals. Well, that's not entirely true, sir. She selected two physicians on her own. Oh, okay. Well, then the record won't support that argument. She selected Dr. Kline and Dr. Castellanato, both of whom sent their own chain of referrals. Okay. So we do have her actually choosing two initiating doctors, and it's the subsequent doctors that fall within their chains. Which is Ronella in this instance. Ronella falls under the Castellanato chain of referrals, sir. Right. Right. Okay. So even though you have these first two choices she's made independently, subsequent physicians were referrals. Yes, sir. Okay. And under that concept, 8A is met because as long as you keep within your chain of referral, it is covered by the Workers' Compensation Act. And she has kept within her chain of referral. Which is the argument here of opposing counsel is Malik to Ronella was in a referral. That's correct. That's his argument. Right. Obviously, we believe he's totally indirect on that, and we believe that the evidence supports the inferences reached by the commission. Okay. Now, what would that evidence be absent the hearsay? The chain of circumstance is showing that she went from doctor to doctor to doctor after meeting with each individual doctor, and that those doctors frequently, if not always, reported back to the prior doctor. And that when she returned to Dr. Malik, she told him she was seeing Dr. Ronella. And so that's the same evidence here of Ronella reporting to or communicating with Malik. Yes, sir. And, in fact, counsel mentioned that as evidence in support. The theory that a doctor reporting back to a prior doctor is evidence in support of a referral. And we have that here. I believe we do, sir. I can't stand here and guarantee that because I don't have that record in front of me, and I am not determined to try the case below. But it is my understanding that we do. And I do know that she returned to Dr. Malik and discussed her treatment with Dr. Malik. So in essence, you're saying the totality of the circumstances corroborates her testimony. It does. It's only one of the circumstances. Our case is independent. As he says, if we decide that the hearsay was, the referral based on her testimony was improper, is there anything independent in the record you're saying there is? I'm saying that the records, the chain of events in the records demonstrate it. Yes, sir. And I'm saying that also because the level here, I believe the review that is appropriate is abuse of discretion. There's no evidence of abuse of discretion here. The commission, the arbitrator, and the circuit court all found the inferences to be not improper, if not actually correct. I believe they found them correct. They all, the arbitrator made an award in favor of my client on this issue. The commission looking at it to know. Well, the determination of whether she did or did not exceed her number of permitted physicians is a manifest weight standard. Whether her statement was properly admitted into evidence is an abuse of discretion standard. If something is erroneous as a matter of law, it is an abuse of discretion. There's no question about that. So the question really is, does her statement come in, number one, is it hearsay or isn't it? And if it is hearsay, is there other evidence in the record that will support the finding by the commission that Ranella was within the chain of referral? Well, I believe Dr. Ranella's testimony in and of itself does that. I believe that the medical records do support that. I believe that the totality of the medical evidence demonstrates that she had referrals between these doctors. And even assuming that this is, as you say, a manifest weight argument, I believe that the manifest weight of the evidence does support the conclusions that were reached. You would have to re-weight the evidence entirely, sir. And I don't believe that that is appropriate in this case. And I would, on a final point, gentlemen, there is what I believe is a clerical error in the decision of the circuit court that I would draw your attention to with the request that it be corrected. The penultimate sentence of the court's order states that the decision is clearly against the manifest weight, therefore we affirm the decision and we affirm the decisions below. I believe that the word not was omitted from that order and should be corrected. And I believe and respectfully pray that my client's position be honored by this court, that the court find and affirm in favor of the decision of the arbitrator, the commission, and the circuit court. Counsel, before you sit down, I'd ask a question to clarify your position on this. If this court found that the commission improperly relied on inadmissible hearsay in regards to the chain of referral, is it your position that the case ought to be remanded to the commission for its determination as to whether or not there was independent evidence supporting the chain of referral? I don't think that's necessary, sir. I think that there is independent evidence. You think it can be done based on this record? I think it can be made the record, yes, sir. Okay. Thank you, counsel. Counsel, you may reply. Thank you. Just briefly with regard to the circuit court decision, I understand the flavor of the decision was an affirmation on manifest weight. So I don't question the need for clarification there. Your Honor, you bring up, Justice, you bring up a very good point. I don't always know when the appellate courts are allowed latitude to draw then their own conclusions if there's an evidentiary reversal, and whether or not this court can then say, because that was hearsay, of course, I'm making a large assumption here that you're considering this, but if you were to do so, can you then say, therefore, there was no referral and draw factual conclusions, or if this should be remanded? I feel as though sometimes I read case law where there's a remand for the commission to do it, and other times I feel like appellate courts draw conclusions then. And I honestly, I don't know with respect if you were to ask me the same question, Justice. I don't know. But let me get to a few of the points that were raised. Counsel brought up whether or not the effect on listener exception applies here. At first glance, you think it could. But the rule goes on to say there is no exception when the state of the other declarant is the issue in the action. The other declarant is Dr. Malik. Okay? So the rule itself, 803B, with regard to the state of mind exception of the effect on the listener cannot be used as an exception when the state of the other declarant is in question. I made a point to cite that in my reply brief. The state of the other declarant, meaning what? The state, meaning if we're questioning whether Dr. Malik, in his mind, made a referral, we can't let the hearsay testimony declaring that be admitted. It is not an exception to hearsay. That's the tail end of 803B. I did cite it. I would invite the court to look at that because it does not apply. And I believe it was mentioned by the court. The other exception being medical evidence and that this is somehow testimony with regard to medical evidence. That only applies to medical records where there is a presumption of trustworthiness and accuracy. And that's why we allow records. It doesn't relate solely to medical records. You could have the doctor testifying as to what the claimant told the doctor. But it doesn't work the other way. You can't have the claimant coming in and testifying, yeah, well, you know, Dr. Malik diagnosed my condition as XYZ and that it was causally connected to the accident. You just simply do away with medical testimony that way. Okay. I mean, it's the presumption of reliability or the indicia of reliability is that a claimant is going to provide honest responses to the medical personnel in obtaining treatment. That's the flow that it goes in, patient to doctor. We agree, Your Honor, but it is not for testimony heard for the first time at a tribunal, at a hearing that isn't in any of the medical records at all with regard to referral, which is what we have in this case. Despite counsel's effort to say that in a general heuristic fashion there's evidence of a referral, I've mentioned a few, I'll mention some of the intake form of Dr. Ranella, totally blank. There's no mention of a referral. Ranella's testimony with regard to this case says he doesn't recall if there's a referral. When asked directly, he says, I don't know how she got here. That's page 243 of your court record. And finally, Dr. Malik's record five days before she sees Dr. Ranella. Dr. Malik sees her on August 26, 2010. Very detailed report with 11 points he made. He numbered them. Absolutely no reference to Dr. Ranella at all. Five days before. So you would think if there was an iota of evidence of a referral, it would be there somewhere, and it's not. So finally, with regard to the standard, it is an abuse of discretion standard. The measure based on the Illinois piping case is whether the ruling materially affected the outcome of the case. Certainly in this case, it affected the outcome. It opened the door to this treatment. So I ask the court to consider our prayer for relief. Thank you. Thank you, counsel, both for your arguments in this matter. It will be taken under the bias of merit that this position shall be issued. Thank you.